**NOT FOR PUBLICATION**

In the

# United States Court of Appeals

## For the Eleventh Circuit

————————————————

No. 24-12392

Non-Argument Calendar

————————————————

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*versus*

SALEEM NAAZIR HAKIM,

a.k.a. Saleem Hakim,

*Defendant-Appellant.*

————————————————

Appeal from the United States District Court

for the Northern District of Georgia

D.C. Docket No. 1:18-cr-00126-MLB-RGV-1

————————————————

Before WILLIAM PRYOR, Chief Judge, and ABUDU and ANDERSON, Circuit Judges.

PER CURIAM:

Saleem Naazir Hakim appeals his convictions for failure to file tax returns and tax evasion. *See* 26 U.S.C. §§ 7201, 7203. He contends that the district court plainly erred by admitting his probation officer's testimony and incriminating evidence that he was allegedly compelled to disclose while on supervised release. He also contends that the district court plainly erred by failing to conduct a hearing, *see Kastigar v. United States*, 406 U.S. 441, 460 (1972), to ensure that the prosecution relied on sources wholly independent of his compelled disclosures. We affirm.

## I. BACKGROUND

In 2018, the government filed an information charging Hakim with "willfully fail[ing] to make and file with the Internal Revenue Service . . . an income tax return for each of the calendar years" 2011, 2012, and 2013, despite knowing that "he and his spouse had and received gross income in excess of the minimum filing threshold." *See* 26 U.S.C. § 7203. He proceeded to trial *pro se* and was convicted on all counts. The district court sentenced him to 21 months of imprisonment followed by a year of supervised release. The conditions of his supervised release required him to "make a full and complete disclosure of [his] finances and submit to an audit of [his] financial documents, at the request of [his] probation officer."

Hakim appealed his conviction, completed his custodial sentence while the appeal was pending, and began his term of supervised release. Later that month, his probation officer emailed him

and requested several documents, including a financial investiga-tion packet, due November 20, 2020. Three days after the deadline, Hakim notified his probation officer that he intended to consult his counsel about "some of the provisions outlined in the financial doc-uments."

Hakim later submitted a "Notice of Non-Consent," stating that, after reviewing the financial documents, he was "Under Pro-test," and he questioned whether he could be compelled to provide self-incriminating information under penalty of perjury. The next day, his probation officer called and warned him that if he refused to provide the required financial information, he would "end [] up in court."

Hakim's probation officer petitioned to revoke Hakim's su-pervised release. She alleged that Hakim failed to make a complete disclosure of his finances and refused to submit to an audit of his financial documents. Hakim then retained counsel, who provided some of the requested information.

At a revocation hearing, counsel reported that Hakim had provided some of the requested financial information but objected to signing a form under penalty of perjury. At the parties' request, the district court continued the hearing to give Hakim additional time to comply. The district court clarified that it would determine whether Hakim had violated the terms of his supervised release based on his conduct before the petition was filed. And it stressed that Hakim needed to provide the information not "at the point of

the spear after he is before the [c]ourt and is fearful of going back to jail or prison."

When the revocation hearing reconvened, Hakim had finally provided the requested financial information, over three months past the deadline, and even then, he signed one of the forms "with some reservations." Counsel contended that Hakim held a good-faith belief that he did not have to provide the requested financial documents for one of the forms his probation officer had provided.

Counsel also sought to preserve a Fifth Amendment objection. The district court questioned how that objection could be preserved after Hakim had provided the documents, and it asked whether Hakim sought to withdraw the documents and obtain a ruling on the Fifth Amendment issue. Counsel did not request a ruling and maintained that Hakim had a good-faith belief that he did not have to provide the requested information.

The district court found that Hakim violated the conditions of his supervised release by failing to provide financial information, revoked his release, imposed a sentence of time served, and ordered an additional year of supervision. That additional year of supervision expired on March 8, 2022.

In April 2022, we vacated Hakim's convictions because the record did not establish that he had knowingly and voluntarily waived his right to counsel. On remand, a grand jury returned a superseding indictment recharging Hakim with the three original counts and adding six new counts—three counts of "willfully

fail[ing] to make and file with the Internal Revenue Service . . . an income tax return for each of the calendar years" 2020, 2021, and 2022, despite knowing that "he had and received gross income in excess of the minimum filing threshold," *see* 26 U.S.C. § 7203, and three counts of "willfully attempt[ing] to evade and defeat income tax due and owing by him and his spouse . . . for the calendar years" 2020, 2021, and 2022, *see id.* § 7201.

Hakim proceeded to trial *pro se* and remained silent "under protest," offered no opening statement, examined no witnesses, made no objections, and offered no closing argument. The government introduced testimony from Hakim's probation officer and the financial documents he provided along with other evidence. It also argued that Hakim's reluctance to disclose financial information evidenced willful tax evasion. The jury convicted Hakim on all counts, and the district court sentenced him to 48 months of imprisonment followed by three years of supervised release.

## II. STANDARD OF REVIEW

We review unpreserved evidentiary challenges for plain error. *See United States v. Spila*, 136 F.4th 1296, 1303 (11th Cir.), *cert. denied*, 146 S. Ct. 250 (2025). For there to be plain error, there must be "an error," that is "plain," that "affects the substantial rights of the party," and that "seriously affects the fairness, integrity, or public reputation of a judicial proceeding." *Id.* at 1306 (citation and internal quotation marks omitted). An error is "plain" only if it is "clear" or "obvious," that is, "the explicit language of a statute or rule or precedent from the Supreme Court or this Court directly

6                    Opinion of the Court                    24-12392

resolv[es] the issue." *United States v. Innocent*, 977 F.3d 1077, 1081 (11th Cir. 2020) (citations and internal quotation marks omitted).

## III. DISCUSSION

The Fifth Amendment provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." U.S. CONST. amend. V. Statements obtained in violation of this guarantee are inadmissible in a later criminal prosecution, and the prohibition extends to both the compelled statement and any evidence derived from it. *McKathan v. United States*, 969 F.3d 1213, 1223 (11th Cir. 2020) (citations and internal quotation marks omitted). Ordinarily, an individual must affirmatively invoke the privilege; otherwise, his answers are not "compelled." *Id.* at 1224 (citations and internal quotation marks omitted). But the privilege becomes self-executing when the government denies the individual a "free choice" to remain silent, such as when the government threatens to impose a penalty for invoking the privilege. *Id.* (citing *Minnesota v. Murphy*, 465 U.S. 420, 434-35 (1984)). A threat creates a "classic penalty situation" in which the individual's failure to invoke the privilege is excused. *Murphy*, 465 U.S. at 435.

In 2016, the Sentencing Commission adopted Amendment 803, which added identical commentary to sections 5B1.3 and 5D1.3 of the Guidelines, which govern conditions of probation and supervised release. The commentary clarifies that although a defendant must "answer truthfully" a probation officer's questions, "a defendant's legitimate invocation of the Fifth Amendment priv-

ilege against self-incrimination . . . shall not be considered a violation of this condition." U.S.S.G. § 5B1.3, cmt. n.1 (2016); *id.* § 5D1.3, cmt. n.2. Amendment 803 changed the law in this Circuit.

Before 2016, *United States v. Robinson*, 893 F.2d 1244, 1245 (11th Cir. 1990), held that a probationer's supervised release could be revoked for refusing to answer questions on Fifth Amendment grounds. But in *McKathan*, we ruled that Amendment 803 "effectively abrogate[ed] *Robinson*." 969 F.3d at 1230. We acknowledged that "*Robinson* necessarily approves of a 'classic penalty situation.'" *Id.* at 1228. As a result, we explained that "no supervised-releasee who chose or chooses to answer questions after [November 1, 2016] could demonstrate that he reasonably believed . . . he was . . . faced with the 'classic penalty situation' *Murphy* prohibits." *Id.* at 1230.

No plain error occurred. Hakim never unambiguously invoked his Fifth Amendment privilege. His "Notice of Non-Consent" and later reservations expressed reluctance, not a legal invocation of the privilege. He later provided the requested financial documents, and the record establishes that the petition to revoke his supervised release was prompted by his repeated failure to meet administrative deadlines—not by any attempt to punish him for asserting his Fifth Amendment privilege.

We reject Hakim's argument that Amendment 803 is inapplicable because his revocation involved a failure to disclose financial information instead of a failure to answer truthfully. *McKathan*

"effectively abrogate[ed] *Robinson*," a case, like this one, that involved a supervisee's refusal to provide financial information. *Id.* "[N]o supervised-releasee" after November 1, 2016, could have reasonably believed that he faced a classic penalty situation. *Id.*

Although Hakim contends that the threat of incarceration compelled him to produce the requested information, the Fifth Amendment excuses failures to invoke the privilege only when the government's conduct would lead a reasonable person to believe that invoking the privilege would expose him to punishment. *Murphy*, 465 U.S. at 434-35; *see also McKathan*, 969 F.3d at 1230 (explaining that a supervisee must "reasonably believe[]" that he faces a classic penalty situation). Hakim's alleged fear was not reasonable based on the legal landscape following Amendment 803 and the circumstances of his case. The district court provided Hakim with an opportunity to avoid any perceived compulsion by allowing him to withdraw his financial disclosures and to obtain a ruling on the Fifth Amendment issue. But Hakim, through counsel, declined that opportunity. At a minimum, in this circumstance, any error would not have been "clear" or "obvious." *Innocent*, 977 F.3d at 1081.

Hakim also neither requested a *Kastigar* hearing nor objected to the probation officer's testimony and the admission of his financial documents. And he identifies no controlling precedent that requires a district court to halt a trial and conduct a hearing *sua sponte*. The district court did not plainly err. *See id.*

## IV. CONCLUSION

We **AFFIRM** Hakim's convictions.